[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11306
Non-Argument Calendar

_____

D.C. Docket No. 4:16-cr-00266-WTM-GRS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

DANA ROSS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(June 6, 2019)

Before JILL PRYOR, BRANCH, and ANDERSON, Circuit Judges.

PER CURIAM:

Dana Ross appeals his conviction for possession of a firearm by a convicted felon. He contends the district court abused its discretion by denying, without holding an evidentiary hearing, his *pro se* motion to withdraw his guilty plea. We disagree and affirm.

## I.

## A.

In August 2016, a federal grand jury indicted Ross for (1) possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g)(1), 924(a)(2); (2) possession of a controlled substance with intent to distribute, 21 U.S.C. § 841(a)(1); and (3) using and carrying a firearm during and in relation to a drug-trafficking offense, 18 U.S.C. § 924(c)(1)(A)(i).

In September 2016, Ross's appointed counsel moved to withdraw. Counsel stated Ross had indicated he did not wish for counsel to continue representing him, and counsel thus believed he was unable at the time to represent Ross effectively. At an October 2016 hearing, the magistrate judge asked Ross whether he wanted to excuse counsel. Ross said no. Ross explained that his problem with counsel was that when he told counsel he wanted a bill of particulars,[1] counsel explained asking

---

[1] *See* Fed. R. Crim. P. 7(f). "The purpose of a true bill of particulars is threefold: 'to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense, to minimize surprise at trial, and to enable him to plead double jeopardy in the event of a later prosecution for the same offense.'" *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986) (quoting *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985)). "A bill of particulars, properly viewed, supplements an indictment by providing the defendant with

for one was a "waste of time." The magistrate judge explained to Ross that in a case such as this one, where the government's indictment tracks the language of the statutes, the government usually gives full discovery to the defendant. In such situations, the court grants "[v]ery, very few" bills of particulars. Ross also stated that he wanted counsel to file a motion to suppress. Counsel responded that his review of the record had convinced him there was no basis to support such a motion, which he had explained to Ross. The magistrate judge explained to Ross that an attorney cannot be forced to file a motion he believes has no merit. The magistrate judge further opined that the facts suggested counsel was correct about the merits of any motion to suppress, but he allowed the two to discuss the matter together after the hearing. The judge denied the motion to withdraw.

Ross later pleaded guilty, under a written plea agreement, to possession of a firearm by a convicted felon. The plea agreement laid out the elements of the offense and the facts that satisfied those elements. Ross agreed to the accuracy of those facts. The agreement noted that any sentence up to the statutory maximum was possible and that Ross could not withdraw his plea if he received a more severe sentence than he expected. Ross affirmed that counsel had "represented him faithfully, skillfully, and diligently, and [that] he [was] completely satisfied

---

information *necessary* for trial preparation. Generalized discovery, however, is not an appropriate function of a bill of particulars and is not a proper purpose in seeking the bill." *Id.*

3

with the legal advice given and the work performed by his attorney." Ross signed the agreement directly below the following provision: "I have read and carefully reviewed this agreement with my attorney. I understand each provision of this agreement, and I voluntarily agree to it. I hereby stipulate that the factual basis set out therein is true and accurate in every respect."

At the change-of-plea hearing in October 2016, the district court restated that final portion of the plea agreement. It reminded Ross that he was under oath and that lying would constitute perjury, which might subject Ross to additional penalties. It explained that if Ross needed anything clarified, he simply needed to ask. It told Ross that "the entire purpose of this proceeding is, almost for the last time, to allow you to know the importance and the severity of the step that you're about to make and to impress upon you the loss of many of your legal rights." Those rights included, as the court explained, a speedy and public trial before an impartial jury at which the government would have to prove its case beyond a reasonable doubt. Ross affirmed he could read write and understand English; was not presently under psychiatric care; had not had a drink in years; and had last unlawfully consumed a controlled substance (Xanax) nine months prior to the hearing.

The district court asked Ross whether the fact that he had a court-appointed lawyer, rather than one he retained himself, influenced his decision to plead guilty.

4

Although he initially said it did influence his decision, after consulting with counsel, he changed his answer and said it did not. When the court asked whether Ross had told counsel everything about the charges against him, Ross said he had not because Ross had "really just got the paperwork." The court remarked that it sounded like Ross did not know whether he wanted to plead guilty. It told Ross no one was forcing him, and if he wanted to go to trial, the judge would be happy to try the case. Ross affirmed he wished to plead guilty. He also declined an offer from the court for an opportunity to sit down with counsel and tell counsel whatever he had not told him.

When the district court asked if counsel had gone over the case with Ross and explained possible defenses, Ross said no. The court then indicated it would keep the case on the calendar for trial. Counsel asked for an opportunity to speak to Ross. After the two conferred, counsel asked Ross on the record: "[E]ven though there are things that we could discuss that we have not discussed, including possibly a serial number on a firearm, have I gone over your case with you, the charges, the potential punishments of each charge?" Ross said counsel had done so. The court then confirmed that Ross was satisfied with counsel's explanations and the amount of time he had had over the course of the proceedings to speak with counsel.

The district court explained that the maximum sentence would ordinarily be "a sentence of imprisonment of not more than 10 years, a fine of not more than $250,000, supervised release of not more than 3 years, and a $100 special assessment." But, the court continued, if Ross had three previous convictions of a violent felony or a serious drug offense or both, committed on different occasions, "then the possible sentence would be imprisonment of not less than 15 years and not more than life imprisonment, a fine of not more than $250,000, supervised release of not more than 5 years, and a $100 special assessment." Ross confirmed that he had tried to learn how the Sentencing Guidelines work and that counsel had explained the Guidelines to him. He then stated his guilt on the record, affirming that he was in fact guilty and admitting the charges made against him. A government witness testified that Ross had pleaded guilty, under a separate indictment, to four different counts of violating the Georgia Controlled Substance Act. Ross did not object and acknowledged he understood. The court found there was a factual basis for the guilty plea and ordered it be entered.

At one point, the district court put the situation in clear terms: "[D]o you understand that by pleading guilty you're giving up all these rights and, if I accept this plea, that will end this case except for sentencing that will take place several months from now? Do you understand that?" Ross responded, "Yes, sir."

**B.**

6

Nevertheless, in March 2017, Ross filed *pro se* a letter to the district court requesting to withdraw his guilty plea. The letter stated:

> I would like to have what I'm requesting put on the record. I am sorry Honorable, but I have been submitted to a great deal of miscarriage of justice, also my due process has been violated, also I was under coercion an [*sic*] duress. I would like to have a hearing of why I want to withdraw my guilty plea[.]

At sentencing a few days later, Ross complained about his counsel. He said counsel had not meaningfully gone over the presentence report with him—which counsel denied, noting he had filed objections to the report and asserting he had gone over it with Ross several times in detail. Ross also stated counsel was "incompetent from the beginning." But he said he had no other objections to the presentence report.

The district court overruled the separate objections counsel had made to the report. It then imposed a sentence of 188 months, the low end of the Guideline range of 188 to 235 months.

As for Ross's letter, the court remarked, "[Y]ou've written a letter asking to withdraw your guilty plea, and that -- that's not going to happen. The Court's not going to allow you to do that. You made the plea willingly and voluntarily, and so we're proceeding with court today."

This timely appeal followed.

## II.

7

Ross contends the district court abused its discretion in failing to hold the hearing he requested in his letter attempting to withdraw his guilty plea.

## A.

A defendant may withdraw a guilty plea after the court accepts the plea but before the court imposes sentence if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). In determining whether the defendant has shown "a fair and just reason," the district court "may consider the totality of the circumstances surrounding the plea." *United States v. Buckles*, 843 F.2d 469, 471–72 (11th Cir. 1988). "Factors analyzed include (1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved, and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea." *Id.* at 472 (citation omitted). "The good faith, credibility and weight of a defendant's assertions" in support of a withdrawal of a plea under Rule 11(d) are issues for the district court. *Id.*

We review a district court's refusal to hold an evidentiary hearing for abuse of discretion. *United States v. Brehm*, 442 F.3d 1291, 1298 (11th Cir. 2006). "It does not amount to abuse of discretion when a court has conducted extensive Rule 11 inquiries prior to accepting the guilty plea." *Id.* The same standard of review applies to denial of a request to withdraw a guilty plea. *Id.* "There is no abuse of

discretion unless the denial is 'arbitrary or unreasonable.'" *Id.* (quoting *United States v. Weaver*, 275 F.3d 1320, 1328 n.8 (11th Cir. 2001)).

**B.**

The district court did not abuse its discretion in denying Ross's requested evidentiary hearing. The court's thorough questioning and Ross's answers at the change-of-plea hearing demonstrate that Ross knowingly and voluntarily pleaded guilty. Ross's subsequent claim of coercion, unsupported by any reasoning or new evidence, failed to convince the district court, as it fails to convince us, that he was entitled to an evidentiary hearing.

At the change-of-plea hearing, the district court correctly noted that Ross affirmed in his written plea agreement that he was guilty. That agreement also stated that Ross was satisfied with his counsel. The court also confirmed no one had forced him to plead guilty. It expressly found Ross was competent, inquiring into his education, psychiatric condition, and use of mind-altering substances. It ensured Ross understood the charges against him and that his attorney had explained them. It told Ross about the many rights he was giving up by pleading guilty. It made sure Ross understood the potential maximum sentences. This probing inquiry convinced the district court that Ross was guilty and that he knowingly and voluntarily intended to plead guilty.

9

Ross's *pro se* letter gave no valid reason to allow him to rescind his plea. It contained a conclusory assertion regarding coercion—an assertion contradicted by the district court's thorough inquiry. In other words, the letter indicates Ross sought to relitigate an earlier position he had taken in open court. Our precedents foreclose that tactic. As the former Fifth Circuit explained in *United States v. Dabdoub-Diaz*, 599 F.2d 96 (5th Cir. 1979),

> Diaz's conclusory allegation unsupported by specifics does not justify a hearing to relitigate representations made by himself, his lawyer, and the prosecutor in open court. In a situation in which a defendant submits specific factual allegations, not directly contradicted in the record, of circumstances undermining his plea, further fact development would be required. This is not such a case.

*Id.* at 100 (citations omitted). So too with Ross: his conclusory, unsupported assertion that he was coerced did not justify an evidentiary hearing.

Ross suggests the district court did not explain why it did not hold a hearing. We disagree. The district court explained at sentencing that it found Ross had changed his plea knowingly and voluntarily. The court was clearly referring to the finding it had made at the change-of-plea hearing. Because we can review what happened at that hearing, including the detailed inquiry that led to that finding, we find the district court's explanation satisfactory to provide for meaningful review.

Ross also contends the first *Buckles* factor—whether close assistance of counsel was available—is in question. *See Buckles*, 843 F.2d at 472. In support, he points to the October 2016 hearing before the magistrate judge on Ross's

10

counsel's motion to withdraw. That hearing reveals only that Ross had asked his attorney to file documents the attorney deemed would be frivolous. That disagreement is not enough to demonstrate a wedge between Ross and his counsel. Moreover, after that hearing, in both the written plea agreement and at the change-of-plea hearing, Ross affirmed he was satisfied with his counsel's performance.

Based on the foregoing, and given the fact that the district court is best positioned to evaluate the good faith and credibility of the defendant in this situation, *see id.*, we conclude the district court did not abuse its discretion in refusing to hold Ross's requested evidentiary hearing.

**AFFIRMED.**