[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-14352

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

QUENTIN TRULEY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:19-cr-00221-TWT-RGV-2

_____

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

It is no small matter for a court to remove a criminal defendant from the courtroom. Quentin Truley was removed twice: once for six minutes during a hearing on his motion to withdraw his guilty plea, and then again for thirty-one minutes of his sentencing hearing. Even so, we conclude that he suffered no harm from his first removal and that the district court did not plainly err in removing him a second time. We affirm.

## I.

Quentin Truley pleaded guilty to two counts of conspiracy to commit Hobbs Act robbery and two counts of brandishing a firearm during a crime of violence. *See* 18 U.S.C. §§ 1951(a), 924(c)(1)(A)(ii). At his plea hearing, the court explained his trial rights, reviewed his indictment, and confirmed that no one had threatened, coerced, or made any promises to him. When asked, Truley's appointed attorney stated that he had no doubts as to Truley's competence to plea and that the two had sufficient time to discuss the plea before the hearing.

Truley and his attorney had history. Truley had filed several pro se motions to dismiss his counsel, raising several complaints. The attorney, for his part, had also moved to withdraw based on Truley's desire to represent himself. The court held a *Faretta*

hearing,[1] at which Truley withdrew his last request to represent himself.  Later that day he pleaded guilty.

One day before sentencing, Truley had a change of heart about his guilty plea.  Through counsel, he moved to withdraw his plea, asserting that it lacked a factual basis because he had disagreed on the record with a few facts the government presented at the plea hearing.  The district court held a hearing on Truley's motion to withdraw right before his scheduled sentencing hearing.  At the motion-to-withdraw hearing, Truley's attorney asked him if he wanted to proceed with the motion.  Truley said that he didn't understand and then gave a short sovereign-citizen-style speech.[2]

---

[1] A *Faretta* hearing is a hearing at which the court advises a defendant on the dangers of proceeding pro se and decides whether he has chosen to represent himself.  *See Nelson v. Alabama*, 292 F.3d 1291, 1295 (11th Cir. 2002); *Faretta v. California*, 422 U.S. 806 (1975).

[2] Here is what Truley said in full:

> For the record, I state I don't understand.  The Defendant party of this case is not in identification or a representation of me, my present blood and flesh person or being.  This Court does not have jurisdictions over me or any proclaimed territories, for the lands and territories are my ancestral estate and national domicile. I'm not corporal or commercial entity of or in any trust, construct and contracts; wherefore, I deny, refuse, disagree and reject any and all contracts, debts and liabilities that arise from any trust, contracts and construct.  This Court has no authority over adjudication, for the subject of the matter has no accusations of any corpus delicti or any injured parties.  Further prosecution, conviction and confinement for the charges of this case will be violation of the laws and terms of the executive departments

The court was unimpressed, but allowed Truley to finish his speech and soon after directed Truley's attorney to argue the motion.

The interruptions soon began. During the argument, Truley interjected that "all those matters were made under psychological—" before the court cut him off and warned him not to interrupt his lawyer. Twice, the court warned Truley that it would remove him if he continued to interrupt. Truley persisted. The court then excused him from the hearing, stating that he was being disruptive and not complying with the court's instructions. Truley's attorney objected to the removal. The court noted the objection and added, "I listened to Mr. Truley's sovereign citizen nonsense. I let him finish that. He's being totally disruptive, and I'm not going to proceed with him present under these circumstances."

For six minutes, Truley was absent from the courtroom while his attorney argued the motion. When the court brought him back, it warned Truley that if he continued to disrupt the proceedings it would have him "removed permanently." Truley was present for both the government's opposition and his

---

and the Department of Justice and the Department of Health and Human Services as well as the statutes that govern the courts, and also the office that must be upheld by the courts. Wherefore, I move in pursuance to be free and unseized at this very moment.

attorney's rebuttal.  After the rebuttal, the court denied the motion to withdraw the guilty plea.

Truley decided to speak up again: "excuse me, Your Honor." The court responded: "Don't interrupt me Mr. Truley," to which Truley responded, "I thought you were done talking."  At that point, the court again had him removed and moved on to the sentencing hearing.  This time Truley's counsel did not object.

During the sentencing hearing, counsel presented several objections related to the sentencing and then Truley's father briefly spoke about the importance of responsibility and his hope to see his son "free again one day."  After the father's testimony was finished, the court informed those present that the court would recess and that he planned to let Truley exercise his right of allocution.  Truley had been absent for thirty-one minutes.

After the short recess, the hearing resumed.  Truley's attorney asked for a reduced sentence of fourteen years.  Truley then made his allocution, stating only that his admission of guilt "was made under psychological duress which caused insufficient awareness due to discrimination and as well as other forms of abuse by the discretions [sic] of the courts."  He added: "That's it."  The court then sentenced Truley to 231 months, or nearly 20 years.

On appeal, Truley argues that the district court erred in removing him from both the hearing on his motion to withdraw his guilty plea and the sentencing hearing.  He relies on both the

Due Process Clause of the Fifth Amendment and Rule of Criminal Procedure 43.

## II.

We use a "multistep process" to review a district court's decision to continue a trial without a defendant. *See United States v. Sterling*, 738 F.3d 228, 234 (11th Cir. 2013). First, we review any constitutional or statutory interpretation by the district court de novo. *United States v. Curbelo*, 726 F.3d 1260, 1271–72, 1276 (11th Cir. 2013). Next, we review the court's factual findings about the voluntariness of a defendant's absence for clear error and, if voluntary, the decision that there existed "a controlling public interest" to proceed for abuse of discretion. *United States v. Bradford*, 237 F.3d 1306, 1311 (11th Cir. 2001). Finally, if the court did err, we consider whether the error was harmless beyond a reasonable doubt. *Id.*; *United States v. Novaton*, 271 F.3d 968, 999 (11th Cir. 2001).

For Truley's removal from his sentencing hearing, we review only for plain error because his counsel did not object. *See* Fed. R. Crim. P. 52(b); *United States v. Mosquera*, 886 F.3d 1032, 1043 (11th Cir. 2018); *United States v. Phillips*, 834 F.3d 1176, 1183 (11th Cir. 2016). Plain error requires a defendant to show: "(1) error (2) that is plain and (3) affects substantial rights." *Mosquera*, 886 F.3d at 1043 (quotation omitted). If those three are shown, we may grant relief if we conclude that the error had a "serious effect on the fairness, integrity or public reputation of judicial

21-14352                Opinion of the Court                7

proceedings." *Greer v. United States*, 141 S. Ct. 2090, 2096–97 (2021) (quotation omitted).

## III.

Truley claims that each time he was removed, that absence violated both his Fifth Amendment due process right and his right to be present under Rule 43.

Under the Due Process Clause, a defendant has a "right to be present at any stage of the criminal proceeding that is critical to its outcome if his presence would contribute to the fairness of the procedure." *Novaton*, 271 F.3d at 998 (quotation omitted). Under Rule 43, a defendant's right to be present extends to specified proceedings: the initial appearance and arraignment, the plea, every trial stage, and sentencing. *Id.*; Fed. R. Crim. P. 43(a). Rule 43 rights do not extend to "every hearing or conference" that happens to be relevant. *Mosquera*, 886 F.3d at 1043 (quotation and emphasis omitted).[3]

A defendant may also voluntarily waive his right to be present under Rule 43. And Rule 43 rights are considered waived if a defendant "persists in conduct that justifies removal" after the court warns of potential removal for "disruptive behavior." Fed. R. Crim. P. 43(c)(1)(C). Disruptive behavior includes repeated interruptions and refusal to cooperate with trial proceedings. *See*

---

[3] We have declined to determine the exact overlap of Rule 43 and constitutional sources of the right to be present. *See Novaton*, 271 F.3d at 998.

*Sterling*, 738 F.3d at 236–37. If a defendant waives his rights, a court may continue the proceeding if there is, on balance, a controlling public interest to continue without the defendant. *Id.*

### A.

We first consider Truley's partial absence from the hearing on his motion to withdraw his guilty plea. As we review the court's decision to proceed in his absence, we will assume that we use the same multistep process that applies for an absence from trial.[4] Truley alleges his absence deprived him of an opportunity to argue that his earlier plea resulted from psychological harm and other influences. Even assuming that the district court erred, the government has met its burden to show beyond a reasonable doubt that any error was harmless.

In evaluating the harmlessness of an error, we examine whether it had a "prejudicial effect" on the defendant, and an error is harmless if it has "little, if any, likelihood of having changed the result." *United States v. Roy*, 855 F.3d 1133, 1167 (11th Cir. 2017); *Chapman v. California*, 386 U.S. 18, 22 (1967). That standard is met here. To succeed on his motion, Truley needed to show a "fair and

---

[4] Because our holding here is based on harmless error, we need not decide whether this multi-step process is always appropriate for an absence from a motion to withdraw a guilty plea. We do not decide whether a hearing on a motion to withdraw a guilty plea is a "critical proceeding" under the Due Process Clause or part of Rule 43(a). Notably, the government agrees that we should review with the same multistep process we would for a defendant's exclusion from trial.

just reason" to withdraw his plea. Fed. R. Crim. P. 11(d)(2)(B). Considering this requirement, any error by the court was harmless because it was unlikely to have changed the result of the hearing: the court's denial of Truley's motion.

This hearing was about Truley's claim that his plea had lacked *factual* basis, not about the *circumstances* surrounding his plea. His motion claimed that it was "fair and just" to withdraw his plea because at the plea hearing Truley had stated that the object that had been brandished "has not been proven to possess the distinctive characteristics" of a firearm. This was the question under consideration; the hearing was *not* an evidentiary hearing about duress or other influences. To qualify for such an evidentiary hearing, Truley would have needed to submit "specific factual allegations, not directly contradicted in the record, of circumstances undermining his plea." *United States v. Dabdoub-Diaz*, 599 F.2d 96, 99 (5th Cir. 1979).[5] He did not.

As a result, the hearing was not evidentiary—the court needed only a copy of the plea transcript to evaluate Truley's claim that he never admitted to brandishing a firearm. The court ultimately decided that Truley "did admit to the facts underlying the charge of brandishing a firearm" and added that the government "would suffer serious prejudice if it had to retry this

---

[5] In our en banc decision in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

case again" because a trial about one of the robberies had already occurred.  Given this reasoning, Truley's presence could not have aided the court's analysis of the plea transcript.  And the finding of serious prejudice to the government from a retrial further reduces the likelihood that Truley could have shown a "fair and just reason" to withdraw his plea, even if he had been present during his counsel's initial argument.[6]

Even if the hearing were instead about duress or other influences, this likely would not have been a "fair and just reason" under Rule 11(d)(2)(B).  Courts adopt a "strong presumption" that any earlier statements made during a plea colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  At the hearing, the court asked Truley whether anyone had "threatened or forced" him to plead guilty, and he said, "No."  Asking about threat or force is another—more accessible—way to ask about duress.  *See Duress*, Black's Law Dictionary (11th ed. 2019) (defining duress as "a threat of harm made to compel a person to do something against his or her will or judgment").  The court did not stop there.  It continued to ask whether the plea was influenced

---

[6] In addition, the fact that Truley had the chance to speak before his interruptions lessens the likelihood of any prejudice from his removal.  At the beginning of the hearing, Truley's attorney asked him whether he wanted to go forward with the motion.  Truley used the opportunity to give an almost two-hundred-word "sovereign citizen" speech without mentioning anything about duress or attempting to alter the basis for his motion.  The court allowed him to finish.  He could have chosen to talk about his plea during this time, but he did not.

by threats or promises, which Truley also denied. Considering these earlier representations, the court was unlikely to accept any bare allegations to the contrary, even if Truley had somehow amended his motion to add additional reasons to withdraw his plea. *See Dabdoub-Diaz*, 599 F.2d at 99 (holding that a defendant's "conclusory allegation unsupported by specifics does not justify a hearing to relitigate representations made by himself, his lawyer, and the prosecutor in open court").

Finally, the presence of Truley's counsel reinforces our finding of harmless error. We have acknowledged that the presence of counsel is a relevant factor in evaluating harm, although not dispositive. *See Novaton*, 271 F.3d at 1000. When a defendant's presence alongside counsel would have been "useless, or the benefit but a shadow" we have held that his presence is unlikely to result in a more reliable hearing. *United States v. Boyd*, 131 F.3d 951, 954 (11th Cir. 1997) (quotation omitted).

Truley and his counsel had ample opportunity to communicate and develop their arguments. The record reflects that the two had discussed the motion earlier that morning, rendering it unlikely that Truley had anything legally relevant to add. Even if Truley had something new to tell his counsel after he was removed, he had the opportunity during the government's argument or before his counsel's rebuttal. And although Truley suggests that his counsel was unable to explain his allegation of psychological duress, we have seen nothing in the record to suggest that his attorney was not responsive to Truley's requests or that he

was incompetent in his representation.  *See Boyd*, 131 F.3d at 954 (finding that the defendant's presence would have been useless despite the defendant's "conclusory statement" that he could have assisted his counsel).

In short, Truley could not have carried his burden to show a "fair and just reason" to withdraw.  Given the narrow purpose of this hearing, the court's analysis of Truley's motion, and the presence of counsel, there was little likelihood that Truley's presence could have changed the result of the hearing.  We conclude that even if the court erred, Truley's partial removal was harmless error.

## B.

We now turn to Truley's second removal, which fell during his sentencing hearing, but before allocution and sentencing. Sentencing hearings are critical proceedings for both due process and Rule 43: defendants must get a chance to challenge the accuracy of information, to argue about its reliability, and present mitigating evidence.  *United States v. Jackson*, 923 F.2d 1494, 1496–97 (11th Cir. 1991); Fed. R. Crim. P. 43(a)(3).  Even so, we conclude that the district court did not plainly err in removing Truley because he has not shown that any error affected his substantial rights under the Due Process Clause or Rule 43.

To prove plain error, a defendant must show that the error affected his substantial rights, which "almost always requires that the error must have affected the outcome of the district court

proceedings." *United States v. Pena*, 684 F.3d 1137, 1151 (11th Cir. 2012) (quotation omitted); *see also United States v. De La Garza*, 516 F.3d 1266, 1269 (11th Cir. 2008).  Here, Truley has the burden to explain how his presence could have affected his sentence. *Pena*, 684 F.3d at 1151.

Truley recites several ways that he was allegedly harmed by his absence from the sentencing hearing: he could not be heard on any of the objections to his presentence report, he did not get "a sense" of the district court's view of the case, and he could not listen to his father's remarks.  Truley also argues that if he had been present, he would not have used his allocution time to talk about his plea hearing.  Instead, he implies that he would have said something, but he claims that "[e]xactly what he could have said is a matter of pure speculation."

Plain error requires more than "pure speculation."  Even if we accept all these as sources of harm, Truley has not shown how these would have affected the outcome of the hearing: a 231-month sentence.  If Truley was not heard on his objections, we need to know which ones.  If Truley needed a sense of the court's views, we need to know how he would have used this information.  If Truley would have changed his strategy in any way based on what was said in his absence, we need to know how.  Because Truley has

not explained how his absence harmed his rights, he has not carried his burden.[7]

Even if Truley had explained how he were harmed, he would run into a practical problem: he contributed to his sentencing hearing despite his partial absence. Through his counsel he made several objections, many of which the two had discussed in earlier correspondences. Before his allocution, Truley consulted his attorney during an eleven-minute recess. Through counsel, he then requested a below guideline sentence of fourteen years. Right after this request, he was allowed an allocution—without a specified time restriction—and concluded: "That's it." At any of these moments, Truley could have challenged the sentencing evidence, reiterated his sentencing objections, or presented new evidence. He never did.

Because Truley has not explained how his presence could have possibly changed the outcome of his sentencing hearing, he has not shown that his substantial rights were affected. The district court did not plainly err.

★    ★    ★

---

[7] Truley also likely forfeited the argument by neglecting to explain how his rights were affected. *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) ("An appellant forfeits an issue when she raises it in a perfunctory manner without supporting arguments and authority." (quotation omitted)).

21-14352               Opinion of the Court                    15

Truley has not shown that his second removal was plain error, and we find that any error in his first would have been harmless.  We **AFFIRM** Truley's conviction and sentence.